**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

PLYMOUTH COUNTY, IOWA, by and
through DARIN J. RAYMOND,
Plymouth County Attorney,

       Plaintiff,

vs.

MERSCORP, INC.; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; BANK OF AMERICA,
N.A.; BAC HOME LOANS
SERVICING; CITIMORTGAGE, INC.;
CORINTHIAN MORTGAGE CO.;
GMAC RESIDENTIAL FUNDING
CORP.; HSBC BANK, U.S.A., N.A.;
JPMORGAN CHASE BANK, N.A.;
CHASE HOME FINANCE, L.L.C.;
EMC MORTGAGE CORP.; SUNTRUST
MORTGAGE, INC.; WELLS FARGO
BANK, N.A.; WELLS FARGO HOME
MORTGAGE, INC.; WMC MORTGAGE
CORP.; and JOHN DOE DEFENDANTS
1-100,

       Defendants.

No. C 12-4022-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS**

———————————————

**TABLE OF CONTENTS**

I.    **INTRODUCTION AND BACKGROUND**............................................... 3
    A.    *Factual And Legal Allegations*................................................... 3
    B.    *The County's Claims*................................................................ 6
    C.    *The Motion To Dismiss*........................................................... 8

II.    **LEGAL ANALYSIS** ................................................................... 11
    A.    *Standards For A Motion To Dismiss*....................................... 11

     *B.     The Allegations Of Recording Requirements* ............................... *12*
     *C.     The Iowa Recording Scheme* ................................................. *14*
     *D.     Requirements For An Unjust Enrichment Claim* .......................... *18*

*III.     CONCLUSION* ........................................................................... *21*

In this putative class action, filed on February 23, 2012, in state court, then removed to this federal court on March 9, 2012,[1] Plymouth County, Iowa, (the County) seeks to pursue claims on its own behalf and on behalf of all other similarly situated counties in the State of Iowa against Mortgage Electronic Registration Systems, Inc. (MERS) and its parent company, MERSCORP, Inc. (MERSCORP), the owner and operator of a national registry that tracks ownership interests and servicing rights associated with residential mortgage loans, and against various mortgage companies and John Doe defendants (the Member Defendants), which are alleged to be members of MERS, shareholders of MERSCORP, or both.[2] The County's claims arise from the defendants' "intentional failure to record all mortgage assignments and instruments that affect real estate in county recording offices and pay the attendant recording fees, as

---

[1] This action was originally filed in the Iowa District Court for Plymouth County as Case No. 03751 CVCV 034041, but was removed by the defendants on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. *See* Notice of Removal (docket no. 1).

[2] Specifically, the County identifies defendants Bank of America, BAC, CitiMortgage, Corinthian, GMAC, HSBC, JPMorgan, Chase Home Finance, EMC, SunTrust, Everhome, Wells Fargo, Wells Fargo Home Finance, WMC, and John Doe Defendants 1 through 100 collectively as the "Member Defendants." Class Action Petition (docket no. 3), ¶ 30.

required by Iowa law." Class Action Petition (docket no. 3), ¶ 1. The County asserts claims for unjust enrichment, civil conspiracy, piercing the corporate veil, declaratory judgment, and injunctive relief. The defendants have moved to dismiss this class action on various grounds, including that the Iowa recording statutes create no private cause of action in favor of the County, that there is no obligation to record mortgages or assignments of mortgages under Iowa law, that the County has suffered no compensable injury that would give it standing, and that the County's allegations fail to state claims upon which relief can be granted. The County resists the motion to dismiss.

## I. INTRODUCTION AND BACKGROUND

### A. Factual And Legal Allegations

The factual background here must be drawn from the County's Class Action Petition. *See* Section II.A., *infra*. The Class Action Petition succinctly summarizes the nature of the action and the factual and legal basis for it, as follows:

> 1. This class action seeks to redress the economic and public harm to Plaintiff Plymouth County, Iowa, and all other counties in Iowa, caused by Defendants' intentional failure to record all mortgage assignments and instruments that affect real estate in county recording offices and pay the attendant recording fees, *as required by Iowa law*.

> 2. In the late 1990s, securitizations of mortgage loans exponentially expanded because of the outsize profits they generated. Banks and other financial organizations securitized residential mortgage loans by selling mortgage loans to intermediaries—usually investment banks—which, through yet other intermediaries, pooled the mortgages into trusts that issued and sold mortgage-backed securities ("MBS") to investors. Each of the intermediaries along the way profited handsomely by collecting fees and other charges.

3.     Each link in the chain of sale from the originating lender to the issuer of the MBS, however, required a valid assignment of the mortgage, *which, under state law, mandated that the assignment be recorded* in the county where the real property is located.

4.     To create even greater profits through the securitization process, Defendants and other leaders in the mortgage industry conspired to develop a confidential, electronic registry that would track ownership and servicing rights for residential mortgage loans outside and to the manifest detriment of the traditional state recording regimes. MERSCORP, MERS, and the MERS® System were created as a result.

5.     Members of MERS, such as Defendant Bank of America, N.A., name MERS as mortgagee of record when recording land instruments and use MERS, which has no meaningful interest in the mortgage, as their proxy in county land records until a mortgage-terminating event such as a release or foreclosure occurs.

6.     By using MERS as a placeholder in county land records, Defendants were and are able to leverage the initial recording of the land instrument in MERS' name to evade county recording fees and avoid publicly recording assignments of mortgages and deeds of trust to other MERS Members (defined below).

7.     Defendants' scheme, perpetrated through the creation, implementation, and use of MERS and the MERS® System, to evade payment of recording fees and recording assignments of mortgages and deeds of trust, has wrongfully deprived Plaintiff and the other members of the below-defined Class of millions of dollars in recording fees. Equally important, Defendants' intentional conduct has broken once transparent chains of title in Iowa counties' public land records by creating gaps through the assignment of mortgages and deeds of trust *that were required to be but were not recorded.*

Class Action Petition at ¶¶ 1-7 (emphasis added); *and compare id*. at ¶¶ 58-77 (describing the defendants' "scheme" in greater detail). The Class Action Petition later identifies the Class on behalf of which it is brought as "comprised of each of the 99 counties of the State of Iowa." *Id*. at ¶ 94.

The County's assertion that the defendants failed to record mortgage assignments as required by Iowa law rests primarily on the following allegations regarding portions of Iowa's recording statutes:

> 33.    In keeping with this centuries-old scheme, *Iowa has a mandatory recording statute*, which provides as follows:
>
>> The evidence of title **shall** be filed with the recorder of deeds of the county in which the real estate is situated, who shall record the same, and place an abstract thereof upon the index of deeds. The recording thereof shall be constructive notice to all persons, as provided in the cases of entries upon said index, and the recorder shall receive the same fees therefore as for recording other instruments.
>
> Iowa Code § 558.11 (emphasis added).
>
> 34.    Pursuant to section 558.41, "[a]n instrument affecting real estate is of no validity against subsequent purchasers for a valuable consideration, without notice, . . . unless the instrument is filed and recorded in the county in which the real estate is located, as provided in this chapter." *Id*. § 558.41.
>
> 35.    The Iowa Code also provides that "[w]here any mortgage, contract, or other instrument constituting an encumbrance upon real estate shall be assigned or released by a separate instrument, it shall be the duty of the recorder to make a notation where the instrument was originally indexed, indicating the nature of such assignment or release and a document reference number of the record where the same is recorded." *Id*. § 558.45.

Class Action Petition at ¶¶ 33-35 (emphasis added, unless otherwise indicated).[3]

## B.    The County's Claims

The County alleges, in Count I of its Class Action Petition, that all of the prior allegations in its Petition give rise to a claim of "unjust enrichment" against all defendants, as follows:

> 106.   In order to avoid the payment of recording fees to Plymouth County and the other Class members, MERS Members caused MERS to appear in the public land records of Plymouth County and the Class as mortgagee of record on mortgage loans that MERS Members registered on the MERS® System.  MERS serves as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof, and their successors and assigns.

> 107.   By naming MERS as the mortgagee of record, MERS and MERS Members, through the MERS® System, intended to and did transfer mortgages among MERS Members without recording such transfers in the public land records of Plymouth County and the Class, and without paying the attendant recording fees.

> 108.   But-for the existence of the MERS® System, such transfers would have been recorded and *the required recording fees* would have been paid by MERS and/or the MERS Members in order to properly transfer mortgages for purposes of mortgage securitizations and otherwise.

---

[3] The defendants do not assert that the County has misquoted any of these provisions, and I find that they are accurately quoted.  The County alleges that various other statutory provisions are relevant.  These provisions pertain to the duties of the county recorder, *see id.* at ¶¶ 36-38, and the recording fees to be collected and the uses to be made of them, *see id.* at ¶¶ 39-43.  I do not find that those provisions need to be set out here.

109. Defendants received a benefit by naming MERS as mortgagee of record on mortgages recorded in Plymouth County and in the other Iowa counties comprising the Class, and exploiting MERS' status to transfer mortgages among MERS Members without recordation and payment of recording fees.

110. The MERS Members benefited from the priority conferred by sections 558.11 and 558.41 of the Iowa Code, which enabled them to represent in agreements executed as part of the securitization process that they were transferring valid mortgages.

111. MERSCORP and MERS also benefited by receiving membership fees, transaction fees, and other monetary benefits by allowing MERS Members to use MERS as mortgagee of record, and tracking and transferring mortgages among MERS Members on the MERS® System.

112. Under the circumstances, it is against equity and good conscience to permit Defendants to retain the benefits arising out of or resulting from naming MERS as mortgagee of record on land instruments recorded in Iowa [sic] County and the other Class members.

113. If Defendants are permitted to retain the benefits of naming MERS as mortgagee of record on land instruments in Plymouth County and in the other Iowa counties comprising the Class, and using the MERS® System to transfer mortgages without paying recording fees, Defendants will be unjustly enriched, to the detriment of Plymouth County and the other Class members.

114. As a direct and proximate result of Defendants' unjust enrichment, Plymouth County and the other members of the Class have been injured and are entitled to restitution from Defendants. Plymouth County, individually and on behalf of the members of the Class, requests that this Court order Defendants to disgorge all profits, benefits, and other compensation Defendants obtained by their wrongful and improper conduct.

Class Action Petition, ¶¶ 106-114 (emphasis added).

In Count II of the Class Action Petition, the County asserts a claim of "civil conspiracy" against the Member Defendants (including the John Doe Defendants), based on their allegation that the Member Defendants "conspired with each other to violate Iowa Code § 558.11 and unlawfully withhold recording fees due to each Class member." *Id*. at ¶ 116; *see generally id*. at ¶¶ 115-120. In Count III, the County asserts a claim for "agency and corporate veil piercing" against the Member Defendants (including the John Doe Defendants), in which it "seeks to pierce the corporate veils of MERS and MERSCORP and impose liability upon the Member Defendants and John Doe Defendants 1-100 (the 'Count III Defendants') for the actionable conduct of MERSCORP and MERS alleged herein." *Id*. at ¶ 122; *see generally id*. at ¶¶ 120-130. In Count IV, the County seeks "declaratory judgment" against all defendants "that Iowa Code § 558.11 requires the recording of written instruments that convey or assign mortgages and deeds of trust on real estate located in Iowa . . . in the county office of the recorder in which such real estate is situated." *Id*. at ¶ 133; *see generally id*. at ¶¶ 131-133. In Count V, the County seeks "injunctive relief" against all defendants "permanently enjoining the Defendants from failing to record mortgages, deeds of trust, and assignment of mortgages and deeds of trust on real estate located in the State of Iowa with the county office of the record where such real estate is situated." *Id*. at ¶ 135; *see generally id*. at ¶¶ 134-136.

## C.    *The Motion To Dismiss*

On May 1, 2012, the defendants filed the Joint Motion To Dismiss Plaintiff's Class Action Petition (docket no. 37) now before me. As noted above, the defendants assert several grounds for dismissal. However, I find it necessary to focus on only one of those grounds, the defendants' contention that there is no requirement to record

mortgages or assignments of mortgages under Iowa law, notwithstanding the County's contention that the viability of its claims does not depend upon whether or not there is such a requirement.

The defendants assert that all of the County's claims depend upon allegations that they were *required* to record mortgage assignments. They assert, however, that Iowa Code § 558.11, on which the County principally relies, simply imposes no such requirement. They argue that this statute requires that "evidence of title" shall be recorded, but that a mortgage or an assignment does not transfer title in real property under Iowa law. Furthermore, they argue, § 558.11 does not even require the recording of a deed, because, as between the original parties, a deed is valid even if it is not recorded. Similarly, the defendants argue that § 558.41, on which the County also relies, plainly does not require the recording of a mortgage or assignment, but only specifies that an unrecorded mortgage or assignment is not valid against a subsequent purchaser without notice. They also assert that the Iowa Supreme Court has expressly held that mortgage assignments do not have to be recorded. The defendants argue that, absent a requirement to record mortgage assignments, the County's claims must fail, because their conduct was entirely consistent with Iowa's recording statutes. More specifically, they argue that, in the absence of a statutory requirement to record assignments, there was nothing "unjust" about their conduct, and there was no benefit conferred by the County by which they were unjustly enriched.

The County contends, however, that this is not a statutory violation case, so that the defendants' contention that Iowa statutes do not require recordation of mortgages or mortgage assignments is a "straw man" argument. Rather, the County contends that it has alleged that the Member Defendants "(a) recorded initial mortgages to obtain the protection, *i.e.*, a first lien, provided by the Iowa recording statute; (b) leveraged the protection afforded by the initial recordation by registering the mortgage loan on the

MERS® System, and assigning the mortgages without paying fees; (c) which allowed MERS Members to represent at each stage in the securitization process that they were transferring first lien mortgages; and (d) which, but for MERS, they could have done only by recording assignments and paying the attendant fees in conjunction therewith." Plaintiff's Brief (docket no. 54-7), 20 (citing Class Action Petition, ¶¶ 62-65, 74). The County argues that these allegations underlie all of its claims and none rely on an alleged legal requirement to record assignments. The County argues that Iowa law does require the recording of mortgages and assignments to ensure priority of the mortgage. The County points out that the defendants do not dispute that they *did* record initial mortgages to secure the protections of § 558.41. The County also argues that, once a mortgage is recorded, § 558.45 requires that any subsequent assignment be reflected in county land records. The County argues that § 558.41 is consistent with Iowa Supreme Court declarations that secret or clandestine assignments are open to abuse, so all assignments should be made a matter of record to comply with the spirit, if not the letter, of Iowa's recording law. The County also argues that the defendants' scheme improperly separates the mortgage from the debt it secures. Finally, on this issue, the County contends that it has adequately pleaded an unjust enrichment claim, because the benefit does not have be directly conferred by the plaintiff on the defendant, the benefit to the defendant just has to be at the expense of the plaintiff, and no violation of a statute is required for enrichment to be "unjust."

In reply, the defendants reiterate that the County's claims all depend upon there being a *duty* to record mortgages and mortgage assignments under Iowa law, the County's recharacterization of its claims notwithstanding, but there is no such duty. They point out that the relief that the County seeks is payment of recording fees for all assignments and declarations and injunctions requiring payment of recording fees for all assignments. They point out that the County's allegation in support of its "unjust

enrichment" claim that they behaved "unjustly" is that they did not pay *required* recording fees. They argue that the County's attempt to recharacterize its claims as based on using initial recording of a mortgage to obtain first lien protection states nothing more than what anyone recording a mortgage seeks, and that the allegation that they then "leveraged" initial recordings by transferring mortgages without paying recording fees is no allegation of wrongdoing, where there was no requirement to record assignments. The defendants argue that, to the extent that they are allegedly taking a risk by not recording mortgage assignments to other Member Defendants, it is a lawful risk and of no concern to the County. Similarly, they argue that their ability to represent that they are transferring first lien mortgages is also of no concern to the County. Indeed, they point out that the mortgages *do* remain first lien mortgages until the debt is satisfied or the mortgage is released. Although the defendants recognize the possibility that the mortgagee (MERS) could release the mortgage to a subsequent purchaser without notice, thus reducing the priority of the assigned mortgage, they argue that possibility has nothing to do with the County's claim for recording fees. Thus, they argue that the MERS System complies with Iowa law.

## II.     LEGAL ANALYSIS

### A.     Standards For A Motion To Dismiss

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Thus, the factual background to a motion to dismiss must necessarily be drawn from the plaintiffs' factual allegations. On the other hand, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Thus, the accuracy of a plaintiff's legal

allegations is a matter for the court to determine. Indeed, I find that whether or not dismissal is appropriate in this case turns entirely on the truth of the County's legal allegations.

## B. The Allegations Of Recording Requirements

The County's assertion that it is *not* alleging a statutory violation as the basis for its claims is blatantly contrary to the allegations in its Class Action Petition. In its Class Action Petition, the County explains the nature of its action as "caused by Defendants' intentional failure to record all mortgage assignments and instruments that affect real estate in county recording offices and pay the attendant recording fees, *as required by Iowa law*," Class Action Petition at ¶ 1 (emphasis added); that recording is "mandated" for a "valid assignment of a mortgage" under Iowa law, *id*. at ¶ 3; and that the defendants broke the transparent chain of title by "creating gaps through the assignment of mortgages and deeds of trust *that were required to be but were not recorded*," *id*. at ¶ 7 (emphasis added). Similar allegations of a "requirement" to record assignments, pursuant to specific statutory provisions, and "violation" of those statutes or a "requirement" to record assignments can be found in paragraphs 9, 33, 46, 58, 96(a), and 96(b) of the Class Action Petition.

The "unjust enrichment" claim in Count I also specifically alleges that the defendants transferred mortgages without paying the "attendant" recording fees, that, but for the existence of MERS, such transfers would have been recorded, that the "required" recording fees would have been paid, and that it is under these circumstances that the defendants have been unjustly enriched. *See id*. at ¶¶ 107, 108, and 112. These allegations assume that any assignment or transfer that changes the mortgagee of record *must be recorded*, and that it is only by keeping MERS as the mortgagee of record that such a requirement is avoided. Such a claim necessarily

requires proof of a requirement that an assignment of a mortgage must be recorded, even if it does not change the mortgagee of record.

The other counts are, if anything, even more explicitly based on an alleged violation of a requirement to record assignments: the "civil conspiracy" claim in Count II expressly alleges that the defendants "conspired with each other *to violate Iowa Code § 558.11 and unlawfully withhold recording fees* due to each Class member," *see id.* at ¶ 116 (emphasis added); the "agency and corporate veil piercing" claim in Count III expressly alleges that the Member Defendants are liable for the actionable conduct of MERSCORP and MERS, which was previously pleaded as failing to record mortgage assignments as required by law, *see id.* at ¶ 122; the "declaratory judgment" claim in Count IV seeks a declaration against all defendants "*that Iowa Code § 558.11 requires the recording of written instruments that convey or assign mortgages and deeds of trust on real estate located in Iowa* . . . in the county office of the recorder in which such real estate is situated," *id.* at ¶ 133 (emphasis added); *see generally id.* at ¶¶ 131-133; and the "injunctive relief" claim in Count V seeks "injunctive relief" against all defendants "*permanently enjoining the Defendants from failing to record mortgages, deeds of trust, and assignment of mortgages and deeds of trust on real estate located in the State of Iowa* with the county office of the record where such real estate is situated," *id.* at ¶ 135 (emphasis added); *see generally id.* at ¶¶ 134-136. Thus, each such claim depends upon an alleged requirement to record mortgage assignments and seeks as relief either the declaration of a requirement to do, injunctive enforcement of a requirement to do so, or damages for failure to do so.

In the face of these specific allegations in the Class Action Petition, the County's attempt to recharacterize its claims as in no way dependent upon a *requirement* to record mortgage assignments is disingenuous at best. The claims plainly *are* based on such an alleged requirement.

## C.    The Iowa Recording Scheme

There is, however, no such requirement in Iowa law.  I have noted that the Iowa
Supreme Court has explained Iowa rules of statutory construction as follows:

> When confronted with the task of determining the meaning
> of a statute, we have stated:
>
>> The goal of statutory construction is to determine
>> legislative intent. We determine legislative intent
>> from the words chosen by the legislature, not what it
>> should or might have said. Absent a statutory
>> definition or an established meaning in the law, words
>> in the statute are given their ordinary and common
>> meaning by considering the context within which they
>> are used. Under the guise of construction, an
>> interpreting body may not extend, enlarge or
>> otherwise change the meaning of a statute.
>
> *Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590
> (Iowa 2004) (citations omitted).  The interpretation of a
> statute requires an assessment of the statute in its entirety,
> not just isolated words or phrases.  *State v. Young*, 686
> N.W.2d 182, 184-85 (Iowa 2004).  Indeed, "we avoid
> interpreting a statute in such a way that portions of it
> become redundant or irrelevant."  *T & K Roofing Co. v.
> Iowa Dep't of Educ.*, 593 N.W.2d 159, 162 (Iowa 1999)
> (citation omitted).  We look for a reasonable interpretation
> that best achieves the statute's purpose and avoids absurd
> results.  *Harden v. State*, 434 N.W.2d 881, 884 (Iowa
> 1989).

*Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337-38 (Iowa 2008); *see Dorr
v. Weber*, 635 F. Supp. 2d 937, 945 (N.D. Iowa 2009) (quoting the above from
*Schadendorf*).  With these rules of statutory construction as a starting point, I have
observed that, under Iowa law,

> [T]he court's role is, first, to determine whether the
> meaning of the statute is plain, and if so, to give effect to
> that plain meaning. *See State v. Public Employment
> Relations Bd.*, 744 N.W.2d 357, 360-61 (Iowa 2008)
> ("When we interpret a statute, our primary goal is to
> ascertain the legislature's intent. *State Pub. Defender v.
> Iowa Dist. Ct.*, 663 N.W.2d 413, 415 (Iowa 2003). To
> determine the legislature's intent, we first examine the
> language of the statute. *Id.* 'If the statutory language is
> plain and the meaning clear, we do not search for legislative
> intent beyond the express terms of the statute.' *Horsman v.
> Wahl*, 551 N.W.2d 619, 620-21 (Iowa 1996)."); *Birchansky
> Real Estate, L.C. v. Iowa Dep't of Public Health*, 737
> N.W.2d 134, 139 (Iowa 2007) ("'If the statute's language is
> clear and unambiguous, we apply a plain and rational
> meaning consistent with the subject matter of the statute.'")
> (quoting *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*,
> 681 N.W.2d 596, 603 (Iowa 2004)).

*Dorr*, 635 F. Supp. 2d at 945-46.

Here, it could not be plainer that none of the statutes upon which the County
relies imposes a *requirement* on a party assigning a mortgage or receiving such an
assignment to record the assignment. *See id.* (statutory interpretation under Iowa law
begins with the plain meaning of statutory language). Section 558.11 imposes no such
requirement, because what it plainly does is require the recorder to record "evidence of
title," *see* IOWA CODE § 558.11, but under Iowa law, a mortgage, and hence an
assignment of a mortgage, does not transfer title in real property. *See, e.g., Norwest
Credit, Inc. v. City of Davenport*, 626 N.W.2d 153, 156 (Iowa 2001) ("As Iowa is a
lien theory state, title does not pass to the mortgagee. *See* Iowa Code § 557.14.");
*Bates v. Pabst*, 273 N.W. 151, 152 (Iowa 1937) ("No doubt the execution of the
mortgage to plaintiff transferred no estate in or title to the land. It merely created a
specific lien or charge thereon in favor of the plaintiff."); *Sheakley v. Mechler*, 203
N.W. 929, 930 (Iowa 1925) ("We have long since relegated to the legal rag bag of the

past the common-law theory of a mortgage, and have adopted the equitable or lien theory. The mortgagee is a mere lienholder. He acquires no legal right to the property as such. . . .").

Section 558.41 does state that "[a]n instrument affecting real estate is of no validity against subsequent purchasers for a valuable consideration, without notice, . . . unless the instrument is filed and recorded in the county in which the real estate is located, as provided in this chapter." Even so, plainly absent from that statement of the consequences of not recording such an instrument is any *requirement* that an assignment be recorded. *Dorr*, 635 F. Supp. 2d at 945-46 (statutory interpretation begins with plain meaning). The incentive to avoid possible loss of validity against subsequent purchasers without notice does not amount to a *requirement* that an assignment *must* be recorded by either a mortgagee or an assignee.

Finally, § 558.45 imposes no duty or requirement on a mortgagee or assignee to record an assignment; what it plainly does is impose upon the *recorder* a duty to record any such assignment presented to the recorder. IOWA CODE § 558.45 ("Where any mortgage, contract, or other instrument constituting an encumbrance upon real estate shall be assigned or released by a separate instrument, *it shall be the duty of the recorder to make a notation* where the instrument was originally indexed, indicating the nature of such assignment or release and a document reference number of the record where the same is recorded.").

Indeed, the Iowa Supreme Court observed the better part of a century ago,

> It is true we have no statute which, in express terms, *requires the recording of assignments of mortgages either of real or personal property*, but it has very frequently been held that, as to the former, an unrecorded assignment will be void in favor of subsequent purchasers and existing creditors, without notice. *Central Trust Co. of Illinois v. Stepanek*, 138 Iowa, 131, 115 N. W. 891, 15 L. R. A. (N.

16

S.) 1025, 128 Am. St. Rep. 175, with cases cited. *This principle, however, finds application only when a subsequent purchaser for value, without notice, is the party invoking the rule.* It is urged, however, by the appellee in the case at bar that, in the absence of a record of an assignment of the mortgage or of the transfer noted upon the record of mortgage, the mortgage is presumed to be owned by and controlled by the mortgagee, and all men may deal with the mortgage or the land, resting upon this presumption in the absence of actual knowledge of the assignment of the mortgage. In support of this proposition, *Parmenter v. Oakley et al.*, 69 Iowa, 389, 28 N. W. 653, is cited.

The proposition affirmed by appellee must be read in the light of the facts of any given case. *It is true that the same reason exists to require the assignee of a mortgage to record the assignment, as to require the mortgagee to record his mortgage, but in each case it is a subsequent purchaser for value, without notice, that is within the contemplation of the rule.*

*Shoemaker v. Raglund*, 211 N.W. 564, 566 (Iowa 1926) (emphasis added); *Shoemaker v. Minkler*, 211 N.W. 563, 564 (Iowa 1926) ("There is no requirement of statute that mortgage assignments be placed of record, in order to protect the assignee against the payment of the notes secured thereby to the assignor who does not have possession thereof."). Thus, the Iowa Supreme Court has not recognized any requirement to record assignments implicit in the statutory scheme. There is simply no requirement to record assignments of mortgages under Iowa law.

To the extent that the County's claims rely on such a requirement, they fail to state claims upon which relief can be granted. Because Counts II (conspiracy), IV (declaratory judgment), and V (injunctive relief) explicitly rely on the contention that recording of assignments is a *requirement* of Iowa law, and that reliance is misplaced, those Counts are plainly subject to dismissal. What these claims seek is an extension of the recording statutes, under the guise of construction, that completely changes the

meaning of the statutes, but the courts cannot impose such a construction. *See Schadendorf*, 757 N.W.2d at 337 (quoting *Auen,* 679 N.W.2d at 590).

The County attempts to salvage its "unjust enrichment" claim in Count I (and, hence, its "agency and corporate veil piercing" claim in Count III) by asserting that those counts do not rely on a requirement to record assignments. I will give some further consideration to that contention.

### D.    Requirements For An Unjust Enrichment Claim

"To recover for unjust enrichment [under Iowa law], [the plaintiff] must show: '(1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001)); *Waldner v. Carr*, 618 F.3d 838, 648 (8th Cir. 2010) (stating the elements in a similar way (quoting *State ex rel. Palmer*, 637 N.W.2d at 154–55)). The Iowa Supreme Court has explained that "unjust enrichment is a broad principle with few limitations." *State ex rel. Palmer*, 637 N.W.2d at 155. Thus, the benefit in question need not "be conferred directly by the plaintiff," because "[t]he critical inquiry is that the benefit received be at the expense of the plaintiff." *Id*.

First, I reiterate that, *as pleaded*, the County's "unjust enrichment" claim relies on an alleged—but nonexistent—legal requirement to record assignments of mortgages, as the basis for the contention that the defendants' conduct somehow resulted in enrichment that was "unjust." *See Lakeside Feeders, Inc.*, 666 F.3d at 1112. More specifically, the "unjust enrichment" claim specifically alleges that the defendants transferred mortgages without paying the "attendant" recording fees and that, but for

the existence of MERS, such transfers would have been recorded, that the "required" recording fees would have been paid, and that it is under these circumstances that the defendants have been unjustly enriched. *See id.* at ¶¶ 107, 108, and 112 (allegations in Count III). As I stated above, these allegations assume that any assignment or transfer that changes the mortgagee of record *must be recorded*, and that it is only by keeping MERS as the mortgagee of record that such a requirement is avoided, but there is simply no requirement that an assignment of a mortgage must be recorded, whether or not it changes the mortgagee of record. Thus, as pleaded in Count I, this claim fails to state a claim upon which relief can be granted, because the legal proposition on which it is based is wrong. To put it another way, because the legal proposition is wrong, there is no circumstance pleaded that makes it "'unjust to allow the defendant to retain the benefit under the circumstances.'" *Lakeside Feeders, Inc.*, 666 F.3d at 1112 (quoting *State ex rel. Palmer*, 637 N.W.2d at 149).

Nevertheless, the County contends that its "unjust enrichment" claim does not depend upon a requirement that assignments be recorded, because it has recharacterized or clarified that claim in its brief to be that the Member Defendants "(a) recorded initial mortgages to obtain the protection, *i.e.*, a first lien, provided by the Iowa recording statute; (b) leveraged the protection afforded by the initial recordation by registering the mortgage loan on the MERS® System, and assigning the mortgages without paying fees; (c) which allowed MERS Members to represent at each stage in the securitization process that they were transferring first lien mortgages; and (d) which, but for MERS, they could have done only by recording assignments and paying the attendant fees in conjunction therewith." Plaintiff's Brief (docket no. 54-7), 20 (citing Class Action Petition, ¶¶ 62-65, 74 (allegations concerning "Defendants' Scheme")).

In this recharacterization, the "benefit" is the protection derived from recording the initial mortgages. Nevertheless, this clarification or recharacterization does not

save the claim, because it still assumes that any assignment or transfer that changes the mortgagee of record *must be recorded* to maintain first lien status, and that it is only by keeping MERS as the mortgagee of record that such a requirement is avoided. In other words, the allegation of "unjust" enrichment is the same: assignments of mortgages without recording them. Again, there is simply no requirement that an assignment of a mortgage must be recorded, whether or not it changes the mortgagee of record.

Moreover, the lien created by a mortgage continues until the mortgage is released, whether or not the mortgage (or a subsequent assignment) is recorded. As the Iowa Supreme Court explained more than half a century ago,

> 'The lien of the mortgage is presumed to continue until the debt is paid. . . . It is elementary that, if the original mortgage is released through mistake, it may be restored in equity and given its original priority, except as to subsequent purchasers for value and without notice.'

*Shalla v. Shalla*, 23 N.W.2d 814, 822 (Iowa 1946) (quoting *Cherry v. Welsher*, 192 N.W. 149, 151 (Iowa 1923)); *Johnson v. Myer*, 198 N.W. 654, 657 (Iowa 1924) ("In the absence of an intentional release of the security, the lien of a mortgage continues until the debt is paid," so an unintentional release does not change the priority of the mortgage lien). Thus, despite unrecorded assignments, a mortgage would retain its first lien status, unless it was released and there was a subsequent purchase for value without notice. The effect of recording is only important as to subsequent purchasers without notice; interim assignees *with notice*, like Member Defendants, require no such protection, *see Raglund*, 211 N.W. at 566, and derive no unjust benefit from failing to record interim assignments.

Thus, even as recharacterized in the County's brief, the "unjust enrichment" claim fails to state a claim upon which relief can be granted, because the legal proposition on which it is based is wrong. Specifically, an allegation that the Member

Defendants recorded only the original mortgage, with MERS as the mortgagee, then assigned the mortgage among Member Defendants without recording those assignments, does not allege any conduct that somehow resulted in enrichment that was "unjust." *See Lakeside Feeders, Inc.*, 666 F.3d at 1112. Under these circumstances, the "unjust enrichment" claim in Count I and, hence, the "agency and corporate veil piercing" claim in Count III, must be dismissed for failure to state a claim upon which relief can be granted.

### III.  CONCLUSION

What the County seeks, on its own behalf and on behalf of the putative Class of Iowa Counties, under the guise of construction of recording statutes, is an extension of those statutes that completely changes the meaning of the statutes, but the courts have no power to grant such an extension. *See Schadendorf*, 757 N.W.2d at 337 (quoting *Auen,* 679 N.W.2d at 590). What the County seeks is a recording requirement that the legislature has declined to create.

THEREFORE, the defendants' May 1, 2012, Joint Motion To Dismiss Plaintiff's Class Action Petition (docket no. 37) is **granted**, and the County's Class Action Petition is **dismissed in its entirety** for failure to state claims upon which relief can be granted.

**IT IS SO ORDERED**.

**DATED** this 21st day of August, 2012.

*Mark W. Bennett*

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA